**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JON A. NIXON,** | : | |
| **Trustee of the Nixon Family Trust** | : | |
| **dated April 19, 2000,** | : | |
| | : | **5:02-CV-226 (CAR)** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **LINCOLN NATIONAL LIFE** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

***ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT***

Before the Court is Defendant's Motion for Partial Summary Judgment [Doc. 69], Plaintiff's Motion for a Hearing [Doc. 78], and Defendant's Motion for Leave to File a Supplemental Brief [Doc. 87]. Having considered the briefs of the parties, the pertinent facts, and the applicable law, Defendant's Motion for Partial Summary Judgment [Doc. 69] is **GRANTED**. Consequently, Plaintiff's Motion for a Hearing [Doc. 78] and Defendant's Motion for Leave to File a Supplemental Brief [Doc. 87] are **DENIED AS MOOT**.

***BACKGROUND***

This case involves a dispute over a life insurance policy. At issue in Defendant's motion is Plaintiff's claim for bad faith penalties under O.C.G.A. § 33-24-6. Because the parties are familiar with the facts, the Court will recite only those necessary to explain its decision. Furthermore, because this case is before the Court on partial summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw all favorable

inferences in favor of that party. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 918-19 (11th Cir. 1993). Consequently, the facts set forth below are taken primarily from Plaintiff's exhibits or are undisputed.

Plaintiff, Jon Nixon, trustee of the Nixon Family Trust, is the beneficiary of a $4,000,000 life insurance policy issued by Defendant, Lincoln National Life Insurance Company (hereinafter "Lincoln"), insuring the life of his mother, the late Mrs. Iris Nixon. Mrs. Nixon applied for the policy in late 1999 upon the advice of Lawrence Williford, a financial consultant with Salomon Smith Barney, Inc. At the time, Mrs. Nixon was 80 years old and had a history of heart problems and several other health problems.

To obtain insurance coverage, Mrs. Nixon was required to submit a two-part application. Mrs. Nixon submitted Part II of the application on December 30, 1999. In it, Mrs. Nixon represented to Lincoln that she had not been diagnosed with, among other things, any type of cancer and that she was under the care of a physician for high blood pressure. After she submitted Part II of the application, but before she had completed Part I, Mrs. Nixon was treated for pain in her upper right quadrant. At no time did Mrs. Nixon disclose the treatment to Lincoln.

Shortly after the policy was issued, but before the policy was delivered, Mrs. Nixon died from pancreatic cancer. Following Mrs. Nixon's death, Lincoln conducted an investigation of the claim. As part of its investigation, Lincoln obtained a list of Mrs. Nixon's treating physicians from her medical insurance company, reviewed Mrs. Nixon's medical records, and interviewed several individuals responsible for issuing the policy, including Lawrence Williford. Lincoln also sent representatives to Georgia to conduct some of the interviews.

During the course of the investigation, Lincoln discovered that Mrs. Nixon had seen her family doctor on February 29, 2000 and April 12, 2000 complaining of pain in her upper right quadrant, that Mrs. Nixon was referred to and treated by another doctor during the April 12, 2000 visit, and that the other doctor scheduled Mrs. Nixon for an ultrasound for April 20, 2000. The ultrasound later was rescheduled for April 24, 2000 at Mrs. Nixon's request, and ultimately revealed multiple masses on Mrs. Nixon's liver. During the investigation, Lincoln also learned that Lawrence Williford submitted a false certification as part of the insurance application stating that he had verified Mrs. Nixon's answers to the health questions and witnessed her signature on the application.

At the end of the investigation, Lincoln denied Plaintiff's claim to the proceeds payable under the policy in a letter dated September 27, 2000. In the letter, Lincoln explained that its decision was based on its determination that the policy was void due to Mrs. Nixon's failure to disclose her health problems prior to the issuance of the policy. As a second ground for denying the claim, Lincoln advised that the policy was not in effect at the time of Mrs. Nixon's death because the policy had not been delivered and accepted before that time. Lincoln's denial letter did not mention Williford's false certification. After Lincoln denied coverage, Plaintiff sought to obtain Lincoln's records relating to the investigation. Lincoln refused to turn them over. Plaintiff then made a bad faith demand on Lincoln, which Lincoln declined to honor, claiming that the policy was never effective. Plaintiff then instituted this action. After both parties conducted discovery, Lincoln moved for summary judgment, which this Court granted. Plaintiff appealed to the Eleventh Circuit Court of Appeals, and the Court vacated the order granting summary judgment and remanded the case, noting "it is for a jury to decide with whom

the fault lies." Nixon v. Lincoln Nat'l Ins. Co., No. 04-10849 at 3 (11th Cir. May 5, 2005). The Eleventh Circuit did not specifically address Plaintiff's bad faith claim in its opinion. Lincoln once again moves for summary judgment, this time on Plaintiff's bad faith claim only.

***DISCUSSION***

**I. Summary Judgment Standard**

In ruling on a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and draw all factual inferences in favor of that party. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). However, the evidence presented cannot consist merely of conclusory allegations or legal conclusions. Aviergan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is proper, then, only where it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Thus, a court must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the moving party must prevail as a matter of law. " Aviergan, 932 F.2d at 1577.

**II. Georgia's Bad Faith Law**

Georgia's bad faith law is codified at O.C.G.A. § 33-4-6. To support a cause of action under that statute, the insured bears the burden of proving that the insurer's refusal to pay the claim was made in bad faith. Moon v. Mercury Ins. Co., 253 Ga. App. 506, 507, 559 S.E.2d 532, 534 (Ct. App. 2002). A refusal to pay in bad faith means a "frivolous and unfounded denial of liability." John Hancock Mut. Life Ins. Co. v. Poss, 154 Ga. App. 272, 279, 267 S.E.2d 877, 883 (Ct. App. 1980). Penalties for bad faith are not authorized where the insurer has any

reasonable ground to contest the claim or where there is a disputed question of fact or law. Belch v. Gulf Life Ins. Co., 219 Ga. 823, 828, 136 S.E.2d 351, 354 (1964); Moon, 253 Ga. App. at 507, 559 S.E.2d at 534-35; Homick v. Am. Cas. Co., 209 Ga. App. 156, 156, 433 S.E.2d 318, 318 (Ct. App. 1993); Poss, 154 Ga. App. at 279, 267 S.E.2d at 883.

In considering whether bad faith penalties are proper, the pertinent issue is not whether the insured was, in fact, entitled to receive benefits. Rather, the issue with respect to bad faith penalties is whether the insurer had "a reasonable basis for believing that [the insured] was not [entitled to benefits]." Moon, 253 Ga. App. at 507, 559 S.E.2d at 535. "The fact that the insured ultimately may be able to prove [that he was entitled to benefits] or that the investigation was not flawless is of no consequence." Id. Thus, while a complete failure to investigate a claim may result in bad faith penalties, an insurer will not be liable for bad faith for failing to consider additional evidence when the issue of liability is close. Compare United Servs. Auto. Ass'n v. Carroll, 226 Ga. App. 144, 148, 486 S.E.2d 613, 616 (Ct. App. 1997) (affirming bad faith award because insurer relied solely on insured's statement in deciding to deny coverage when statement called into question, but did not exclude, coverage), with Progressive Cas. Ins. Co. v. Avery, 165 Ga. App. 703, 706, 302 S.E.2d 605, 607 (Ct. App. 1983) (reversing denial of j.n.o.v. on bad faith claim on the grounds that insurer's failure to interview three witnesses did not amount to bad faith). In sum, if an insurer has any reason to deny a claim, the insurer is within its rights to do so, and does not expose itself to bad faith penalties.

Normally the question of bad faith is a jury question, but bad faith cases are somewhat of an anomaly. See Rice v. State Farm Fire & Cas. Co., 208 Ga. App. 166, 169, 430 S.E.2d 75, 78 (Ct. App. 1993). When there is a factual conflict with respect to liability, there is no factual

conflict, as a matter of law, with respect to bad faith. Assurance Co. of Am. v. BBB Serv. Co., 259 Ga. App. 54, 58, 576 S.E.2d 38, 41 (Ct. App. 2002) (granting summary judgment on bad faith claim because disputed questions of fact as to insured's entitlement to coverage provided reasonable grounds for insurer to deny claim). Thus, the existence of a factual dispute is a complete defense to a bad faith claim, and permits summary judgment. Moon, 253 Ga. App. at 507, 559 S.E.2d at 534-35; see also Belch v. Gulf Life Ins. Co., 219 Ga. 823, 828, 136 S.E.2d 351, 354 (1964) (concluding that finding of bad faith cannot be sustained where evidence in case would support finding of non-liability); Progressive Cas. Ins. Co. v. Avery, 165 Ga. App. 703, 706, 302 S.E.2d 605, 607 (Ct. App. 1983) ("Where the issue on ultimate liability is closely contested, a finding of bad faith is generally unjustified."). Put differently, "[i]t is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, [about] whether an insurance company had reasonable grounds to contest a claim." Ga. Farm Bureau Mut. Ins. Co v. Richardson, 217 Ga. App. 201, 206, 457 S.E.2d 181, 185 (Ct. App. 1995). Therefore, "if the issue of liability is close, the court should disallow the imposition of bad faith penalties." Homick v. Am. Cas. Co., 209 Ga. App. 156, 156, 433 S.E.2d 318, 318 (Ct. App. 1993).

This does not mean, however, that summary judgment is proper on a bad faith claim any time the insurer alleges that there is a factual dispute. Rather, a court must consider whether the insurer's allegations of a factual dispute are legitimate. "[A] court should carefully scrutinize any claim of a contest in facts to preclude the reliance by an insurance company on fanciful allegations of [a] factual conflict to delay or avoid [the payment of] legitimate claims." Cinncinati Ins. Co. v. Kastner, 233 Ga. App. 594, 596, 504 S.E.2d 496, 498 (Ct. App. 1998);

Richardson, 217 Ga. App. at 206, 457 S.E.2d at 185. For example, courts have refused to conclude that, as a matter of law, an insurer had reasonable grounds for denying a claim, despite a factual conflict, when there was very little evidence to support the insurer's claim of non-liability and overwhelming evidence to suggest that the claim was valid. Kastner, 233 Ga. App. at 596, 504 S.E.2d at 498; Richardson, 217 Ga. App. at 206-07, 457 S.E.2d at 186.

Carefully scrutinizing the evidence in the record, the evidence shows, as a matter of law, that Lincoln had reasonable grounds to deny Plaintiff's claim. Lincoln conducted a thorough investigation into Mrs. Nixon's death and discovered that Mrs. Nixon received medical treatment at around the same time that she was attempting to obtain life insurance. Because Mrs. Nixon failed to inform Lincoln of the treatment, Lincoln had reasonable grounds to believe that Nixon was precluded from recovery on the life insurance policy under O.C.G.A. § 33-24-7, which allows an insurer to deny a claim for insurance benefits if the insured has made a material misrepresentation.

Though there is conflicting evidence suggesting that the fault for Mrs. Nixon's non-disclosure may lie with Lawrence Williford, this factual conflict is the very type of conflict that normally precludes a finding of bad faith. See Belch v. Gulf Life Ins. Co., 219 Ga. 823, 828, 136 S.E.2d 351, 354 (1964). The issue of liability is close in this case, and there is substantial evidence to support both theories. Thus, this is not a case where the evidence supporting the insurer's theory is thin and the evidence supporting the insured's theory is overwhelming. See, e.g., Kastner, 233 Ga. App. at 596, 504 S.E.2d at 498. In fact, the closeness of the liability issue is illustrated by the fact that this Court granted summary judgment while the Eleventh Circuit reversed. See Homick v. Am. Cas. Co., 209 Ga. App. 156, 156, 433 S.E.2d 318, 318 (Ct. App.

1993) (holding that an insurer had reasonable grounds for denying a claim as a matter of law when the issue of the insured's entitlement to benefits was so close that the trial court granted summary judgment and the court of appeals reversed); see also John Hancock Mut. Life Ins. Co. v. Poss, 154 Ga. App. 272, 279, 267 S.E.2d 877, 883 (Ct. App. 1980). Though a jury ultimately may decide that Ms. Nixon is entitled to recover under her policy, such a finding would not defeat the conclusion that Lincoln did not act in bad faith. Moon v. Mercury Ins. Co, 253 Ga. App. 506, 507-08, 559 S.E.2d 532, 535 (Ct. App. 2002).

Plaintiff argues that there is a genuine issue of material fact as to whether Lincoln acted in bad faith because Lincoln failed to mention Williford's false certification in its internal claim summary and in its letter to the Nixons denying the claim. Lincoln's failure to mention Williford's false certification, however, does not suggest that the reasons given by Lincoln for its denial of Plaintiff's claim somehow amounted to "fanciful allegations" to avoid paying the claim. Even assuming that Lincoln's failure to mention Williford's alleged misconduct somehow amounted to overlooking the misconduct, the undisputed facts remain that Mrs. Nixon received treatment for health problems during the time that she was applying for life insurance, and that she failed to inform Lincoln of her treatment. Furthermore, even though Lincoln failed to mention Williford's alleged misconduct in its claim summary and its letter to Plaintiff, the evidence does show that Lincoln at least investigated Williford's misconduct. Lincoln took a statement from Williford and later met with personnel from Salomon Smith Barney to clarify the procedures that were followed with respect to Mrs. Nixon's application for insurance. In light of its investigation, Lincoln was within its bounds to conclude that Mrs. Nixon's failure to inform Lincoln of her treatment precluded Plaintiff from receiving the proceeds of Mrs. Nixon's life

insurance policy, even in spite of Williford's failure to verify the application answers with Mrs. Nixon.

***CONCLUSION***

Having found no genuine issue of material fact with respect to Lincoln's bad faith, the Court **GRANTS** Lincoln's Motion for Partial Summary Judgment [Doc. 69]. In so doing, the Court finds it unnecessary to hold a hearing on the matter or to consider Defendant's supplemental brief. Consequently, the Court **DENIES AS MOOT** Plaintiff's Motion for a Hearing [Doc. 78] and Defendant's Motion for Leave to File a Supplemental Brief [Doc. 87].

**SO ORDERED**, this 14th day of December, 2005.

s/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

AEG/ssh/cw